Case number 13-7123. Tanya Coleman Lee as personal representative of the estate of Joseph Lee Appellant v. Government of the District of Columbia. Ms. Ehrenberg for the Appellant. Mr. Schifferle for the Appellant. Good morning. May it please the Court, Jason Ehrenberg on behalf of the Appellant. The Supreme Court noted in Merchant Mutual v. Baring that the tendency of an instruction not supported by evidence often is to mislead the jury by withdrawing their attention from the legitimate points involved in the issue. This is precisely what happened in this case. During closing arguments, the District of Columbia read the requested Sutton instruction to the jury. The District then argued to the jury that Mr. Lee's condition is corrected by medication and meals, three meals a day plus snacks. Thus, the District proclaimed, in assessing whether Mr. Lee had a disability within the meaning of the ADA, the jury should answer no, because Mr. Lee's diabetes was in control, was controllable, and therefore did not substantially limit his major life activity. He has been able to carry out the duties as a correction officer. Based on that instruction and the District's argument, the jury found that Mr. Lee was not disabled within the meaning of the ADA. Counsel, we don't normally, in fact, we're a counselor, admonish not to read the argument when you're coming before the jury. Sir, I'm not reading. I just have some notes. Go ahead. Okay. So based upon that, the jury found that Mr. Lee was not substantially limited in a major life activity. But the major life activity that the District pointed them to and the major life activity was working. But that was not the issue before the jury. The major life activity that was presented to the jury, to the court, was the major life activity of eating. And this court's decision... I'm curious about that. I know that's how the case was argued. But why isn't the major life activity his ability to stay awake and not eating? Because eating seems a little strange here, because that's also the limitation, right? The way to address the impairment is through his diet. So I was kind of confused by that. I agree that there could have been several different major life activities that were argued, such as working, staying awake. But the evidence in this case and the argument focused on eating. And in that regard, I think this court's decision in Capgee is very instructive. Here, as in Capgee, the plaintiff's treatment regimen allowed him to control his diabetes. And generally, that involved medication, exercise, and a pretty regimented eating. Five hours, meals five to six hours apart, snacks two hours after a meal. Counsel, your basic argument, if I understand it correctly, is there is insufficient evidence to support the district judge's charges. Is that your fundamental argument? Right. But there was no evidence that the eating was mitigated. There was evidence that his ability to work was mitigated if he ate. What do you mean that the eating was mitigated? The problem with the Sutton instruction was that it said that if the major life activity can be mitigated with certain measures, then there's no disability. And here, the major life activity that was at issue was eating. And to say that eating was mitigated by eating, it's circular. It doesn't make sense. Mr. Lee needed to eat at certain times in addition to other things. And the problem here is that the district terminated him for allegedly falling asleep on the job on a day when it was established that he did not have the opportunity to eat. And so, I think what the jury's determination was that Mr. Lee was able to do his job if he ate. And if he could do his job if he ate, then he's not disabled. But what Capshie notes is that... If he just skipped a meal, would he be disabled? If he skipped a meal on his own? If Mr. Lee did not eat meals, the evidence in the record is... Answer the question. The answer is yes. If for some reason he just forgot to eat at one time, would he be disabled? Yes. The evidence in the record established that he would be woozy, he would fall asleep, or he could slip into a diabetic coma. And that's the kind of dire consequence... Is that consistent, in your view, consistent with Sutton on that? I'm sorry? Is your view consistent with the Supreme Court holding Sutton? I believe so. And I believe that, again, Capshie is instructive because Capshie interpreted Sutton, interpreted a person with a substantial limitation on their eating, and found that where the treatment regimen itself can be what substantially limits a major life activity. So what the court in Capshie found, based upon an analysis of Sutton, was that although the plaintiff's treatment regimen allowed him to control the diabetes, the regimen itself substantially limited the major life activity. Well, you switched your argument. You switched your argument from trial to the Court of Appeals. I wanted to listen to make sure I was getting it. At the district court, you objected to the injury instruction because there's no evidence that Lee got all of his meals. On appeal, you are arguing that regardless of whether he had all of his meals, the requirements of a meal schedule were themselves substantial limitations. They're entirely different theories. You've completely changed your theory, and you can't do that on appeal. Well, and I think the evidence in the record established that he did not have all of his meals on the day in question. That's a jury question. And you're climbing a really steep hill to try and convince us to overturn the jury's decision on whether or not there was substantial evidence that he got the meals, which is what the fight was about the jury instruction below and what your theory was below. That is, he really wasn't getting the meals that he needed. The Supreme Court has said that can be a mitigating factor. So the fight was whether he actually got the meals. On appeal, you switched. You say regardless of whether he had the meals, the requirement of having a meal schedule is itself a substantial limitation. That's a completely different theory. I respectfully disagree. I believe that. I'm reading what's in your brief. I'm looking at it. I'm not making this up. I don't think they're different theories. Oh, okay. All right. Fine. You don't think they're different? Well, there's one judge up here who can't put them together. If you start the second one by saying whether or not he got the meals is not the question, they're completely different. And that's what you did. Regardless of whether he had his regular meals, the requirement of his meal schedule was itself a substantial limitation. That's completely different than the theory below. And what the jury had was a very typical jury question. They decided it. Whether you and I would agree, whether you're right or wrong, they decided it. They could listen to the evidence and say he was able to eat his meals and no one stopped him. But I think that the instruction was misleading in that I don't think it's a different argument. I apologize. You don't have to apologize. I'm giving you a shot at me so I can clear my head, but they look very different to me. I think the second instruction that said that he could be mitigated, there was no evidence in the record to suggest that the meals were provided on the night in question. Wasn't it your obligation to put evidence in the record? The evidence in the record was that he did not have a meal on the night in question. And so the instruction misled the jury. Did he not have a meal or did he not have a snack? A meal or a snack. It's an eight-hour shift. Right. I thought the testimony was that he had had meals, as he always did, but he didn't have meals during work, right? He had arranged his schedule to have no meals during work, but that he would bring a snack, but on this night he forgot the snack. Right. And on this night, the snack, whether it's a meal or a snack, he still needed to eat. Two hours, in between meals, two hours. And it does make a bit of a difference, doesn't it? Because I don't think you put on evidence that missing a snack would have dire consequences to him. And this case, I thought, was about missing the snack. But actually, isn't this case really about what Judge Silberman started? This is actually a very discreet issue here, and that is, is there a factual – in the record, is there a factual basis to support the jury instruction? Right. And the jury instruction is simply following Sutton, right? There's nothing odd about the jury instruction. You may disagree with Sutton. Congress didn't like Sutton, so they had their way with it. But under Sutton, the question we have to ask in answering whether there's a disability is, can the impairment be addressed? Right. And as I understand it, the only question on appeal, whether it's been forfeited or not is a different issue. The only question on appeal is whether there was sufficient factual basis in the record to justify that instruction. And so let me ask you, was there anything in the record dealing with the mitigation of the impairment, anything at all? I don't believe there was. I believe that if the impairment was his ability to work, and you're arguing the mitigating measure would be if he ate at regular times, he could work, then, yes, there would be evidence in the record. But here, the limitation is the ability to eat, and the regimen itself is what was the substantial limitation. Yeah, that's your switch theory. Yeah, I understand that. Well, it's a different theory. The ability to eat. That's not the case we prepared. A limitation on eating would come about, let's suppose, if you had something in your mouth that prevented you from eating. I don't understand the limitation on eating in this case at all. I'm very puzzled about that. Many courts, including this court in CAPJI, have found that there can be a substantial limitation on the ability to eat. Yes, of course. I can see it. But I don't see this as a case of where there's a substantial limitation on the ability to eat. And it's not whether you can put food in your mouth, but it's whether, if you do not eat according to a certain regimen, you will suffer dire consequences. And what makes this case different from the cases relied upon by the government and what makes... Actually, there was evidence in the record that he fell asleep independently of any eating question, and a jury could have concluded that, couldn't they? But that's not the issue that they reached. Or that he forgot his snack. Or he forgot his snack. But he forgot the snack and then called to ask for relief so he could get a snack and eat. And the district would argue that he fell asleep. There's a difference of... Isn't that a jury question? That whether or not he fell asleep or whether or not he was woozy, yes, that's a jury question. But whether or not... There was no evidence to suggest that if Mr. Lee did not eat his snacks or did not have a meal, he would not suffer dire consequence. And that's what the... But the question... There's a threshold question we're dealing with here, right? And that is whether he's covered by the act, whether he's disabled. Right? Right. And Sutton tells us, at least at that period of time, how we answer that question. Correct? Correct. And that question is, if there are ways to mitigate the impairment, Sutton tells us you're not disabled. Correct. And as I understand, that was the question that... That was what framed the jury instruction. Correct. Now, what's wrong with that? That's a statement of law. Yeah. Even if the statement of law is correct, as we note in our papers... Which it is. Even if it's correct, if there's no evidence to support an aspect of it... But wasn't there lots of testimony that he had this impairment that could be controlled with diet and exercise, right? With diet and exercise. And that cuts right to the core of the question of whether he's disabled or not. I don't see how a jury would be misled by that. Well, and I think because it implies that the treatment regimen itself, that the meal plans, having to eat at certain times and spacing things apart, having to take medication and the exercise, it's implying that that in and of itself is not a substantial limitation on his eating. It's saying just by eating, he's okay. But it's not just by eating, it's by eating at certain times. What did you suggest as the proper instruction to the judge? I think the instruction... What did you suggest as the proper instruction? You objected to the instruction, but in a peculiar way. You said we thought that issue came up before. You didn't suggest any instruction, an alternative. I must admit, I don't know what... There was a prior instruction, and then the district asked for this instruction after the close of trial for the first time. I must admit, I don't know the answer to that. I wasn't the attorney arguing the case. So I don't know what... I'm sure it's in the record, and I can look for that, but I don't know the answer to that question. Okay. If there are no further questions, we'll give you back a couple of minutes. Thank you. We'll hear from the District of Columbia now. Good morning, and may it please the Court, Paul Schifferle for the District of Columbia. The plaintiff fails to show error, let alone reversible error, in the Court's instruction on mitigating measures. I think it is conceded here today, as well as in the plaintiff's reply brief, that this was a jury question, whether the plaintiff was disabled, and that the plaintiff had the burden of proof on this issue, and that in order for the jury to apply the evidence that it had heard regarding mitigating measures, the instruction was... Everybody seems to agree to that, but I'm not sure. Is that a correct statement of the law, what the district judge said in the instruction? No, I understand, at that time. Right, the instruction... Didn't Justice O'Connor point out that there was a balancing test as to whether the mitigating factors were of such a nature as to still constitute a disability? Well, the instruction that the Court... I don't recall the particulars of Justice O'Connor's... You don't recall the opinion of Sutton? No. And I actually think that would be relevant to the case, since that's your argument. Well, but, Your Honor, it is conceded that the instruction that the Court gave was a correct statement of the law. I understand that. I'm asking a separate question. Notwithstanding the fact that it's conceded, I'm puzzled. Was it a correct instruction? Yes, Your Honor, it was a correct instruction. But doesn't Sutton say it's a balancing test, that the mitigating measures can be so significant that the disability remains? And I don't think that that is inconsistent at all with the instruction that the Court gave. It's conceded that the instruction was a correct statement of the law. There was no alternative because... I agree, I agree, I agree. Frankly, I don't think it was a... It isn't before us, but it puzzles me because I don't think it was a correct instruction. Okay, well... In other words, at least it was a good argument. As I read Sutton, it's up to the jury to determine whether the mitigating factors have such great significance themselves that the disability remains. Well, this is the instruction that was agreed upon. I agree with Judge Griffith. The disability seems to me the ability to stay awake to work rather than eat. It's really puzzling. This is a very puzzling case. But as Judge Edward points out, this is all academic because the counsel has... Whatever argument he's making here, he didn't write down below. And he didn't even suggest a different instruction. Yes, Your Honor, and those are my points as well. There is no alternative that was proposed. It was conceded. I think that this instruction was a correct statement of law. The argument has evolved from the time that it was made in the District Court to the appeal brief to even now. So I think it's been forfeited, as well as just being wrong on the merits. It was a correct statement of law. There was evidentiary support for the instruction. The testimony was that if Mr. Lee ate his regular meals, that his diabetes would be under control. There was also testimony that he did eat his regular meals on the day in question. The jury, this is a classic jury question. The jury was not required to credit Mr. Lee's testimony or the testimony of his wife. His own doctor's testimony, in our view, did not even support Mr. Lee's position in a reasonable jury could so find. There was certainly evidence in the record, just to address something that plaintiff's counsel said, there certainly was evidence in the record that he did have the meals, the three meals that he was advised to have that day preceding the shift. The Cappucci case, which plaintiff's counsel also referred to, is clearly distinguishable there. The court merely found the evidence sufficient to reach the jury that it was a jury question. We don't take issue with that. The jury did resolve the issue. In fact, the evidence in Cappucci was much stronger than the evidence here. The plaintiff's case was quite weak, as we explained in our brief. Again, for all those reasons, a reasonable jury could find the way it did. The instruction was proper. It was a correct statement of the law. It assisted the jury. The jury has heard evidence of mitigating measures, and so it needs to know how to apply that evidence, and the instructions serve that purpose. It's not erroneous in any respect, and certainly not reversible. If the court has further questions, I'd be happy to. Your argument is that the jury was properly finding that food mitigates his ailment and that he was not foreclosed from having food on the schedule which was required in order to mitigate. That's correct, Your Honor. In fact, the jury could have found that diabetes had nothing to do with Mr. Lee being asleep or allegedly asleep at the night in question. That is, Mr. Lee claimed that he wasn't asleep at all. His supervisor said he did find him asleep. So there you have that conflict in the evidence that the jury resolves, and the jury could have concluded that his supervisor was correct, that he was asleep, and that Mr. Lee was falsely testifying that he was not asleep. Well, that's a different question than the one I'm raising. Oh, I just meant that the jury could infer from that that Mr. Lee was exhibiting consciousness of guilt, knew himself that his diabetes had no relation to the fact of what happened that night. And so the jury, for a variety of reasons, weighing the evidence, could reach the result that it did. The instruction was proper. Again, if there are no further questions, thank you very much. We give you two minutes for rebuttal, not for new argument, but for rebuttal. Just with regard to the argument that the instruction was agreed upon and was an accurate statement, the district court found on page 831 of the appendix, the joint appendix, that the district could give the Sutton instruction, but it was near to frivolous. And the essence of the objection going to the district could give the Sutton instruction. The court said, alternatively, you can give up your Sutton instruction, which I think is near to frivolous, and we could take out regard to that. So my point is the district court itself, the gatekeeper, allowed the instruction over the objection of trial counsel. What was the objection? The objection, as noted in our brief on page 3 of the reply brief, was that the evidence in the record did not support the instruction. I don't understand that objection. I simply do not understand that objection. And counsel certainly didn't suggest any alternative instruction. Well, if I can just clarify that one point, the district's proposed instruction was improper because the district court had previously found in the evidence in this case. No, I read that. Right. That doesn't make any sense. It doesn't explain. There's no suggestion of an alternative instruction. Saying this is wrong for this reason, this reason, this would be the right instruction. Well, there were instructions that were already in place, and then this came in at the last minute. So there were alternative instructions in place, and this one was objected to and allowed in. It's not your fault, counsel. You weren't trial counsel, but it was pretty screwed up. I'm trying to do my best, sir. And I guess the one other point, counsel mentioned CAPTCHE. Again. Make it very quick. You're out of time. The whole point here is that the regimen itself is what substantially limited the eating, and to say that it could be mitigated by the regimen, this court, I would think, to find that there's no limitation on eating and that it has to be work or something of that nature that's limited, I think, would be at odds with this court's prior decision in CAPTCHE. Thank you. Thank you very much. The case is submitted.
judges: Griffith, Edwards, Silberman